1997 ND 179

**JOHNSON FARMS, a general partnership, Plaintiff and Appellant,**

v.

**George E. McENROE and Donna McEnroe, Defendants and Appellees.**

**Civil No. 970045.**

Supreme Court of North Dakota.

Sept. 10, 1997.

Douglas A. Christensen (argued), of Pearson, Christensen, Larivee, Clapp, Fiedler & Fischer, Grand Forks, for plaintiff and appellant.

Robert Vaaler (argued), of Vaaler, Warcup, Woutat, Zimney & Foster, Grand Forks, for defendants and appellees.

NEUMANN, Justice.

[¶ 1] Johnson Farms, a general partnership, appealed from a summary judgment dismissing its action against George and Donna McEnroe seeking specific performance of an oral agreement for the purchase of real property, or in the alternative, a return of part of the purchase price it paid for property adjacent to that for which specific performance is sought. We conclude summary judgment was inappropriately granted because there exist genuine issues of material fact. We reverse and remand.

[¶ 2] We review the evidence in the light most favorable to Johnson Farms, the party who opposed the motion for summary judgment. *See Sternberger v. City of Williston,* 556 N.W.2d 288, 289 (N.D.1996). Johnson Farms' partners include Bert Johnson and his son, Al Johnson. According to Bert Johnson's affidavit, he began negotiating in 1992 on behalf of the partnership to purchase from the McEnroes 59.17 acres of property near Grand Forks. In 1993 Johnson Farms agreed to purchase that property from the McEnroes for $9,000 per acre, totaling $532,-530. For the McEnroes to avoid paying federal capital gains taxes, Johnson Farms agreed to structure the transaction as a "like-kind" exchange under 26 U.S.C. § 1031.

[¶ 3] Because of the large purchase price, the parties agreed the transaction would occur in two phases. The first phase took place when Johnson Farms purchased land for $373,000 from Bill and Pamela Rychart and, in January 1994, exchanged that property for 30.61 acres of the McEnroes' property. The transaction resulted in Johnson Farms effectively paying $3,185.56 per acre more than the agreed $9,000 per acre sale price for that 30.61 acres of property. Johnson Farms then owed the McEnroes $159,530 for the balance of the 59.17 acres.

[¶ 4] In February 1994, George McEnroe executed an option which said Johnson Farms could either provide "like-kind property" or deposit $159,530 with a " 'qualified escrow agent', 'trustee', or 'middleman' " by April 1, 1995 to pay for the balance remaining due on the McEnroe property. Johnson Farms and George McEnroe looked for other property acceptable to the McEnroes to complete the last part of the "like kind" exchange. This posed some difficulty because the amount Johnson Farms was authorized to bid for the McEnroes was limited by the amount the McEnroes would authorize in light of the balance owing on the property. For example, in February 1995 Bert Johnson and the McEnroes' son, Tom McEnroe, attended an auction where Tom unsuccessfully tried to purchase in Johnson Farms' name property acceptable to his parents to complete the exchange.

[¶ 5] According to Bert Johnson, he and Tom McEnroe had the following conversation at a Grand Forks restaurant in March 1995:

> "At that time I asked Tom McEnroe if his father was an honest man. I explained to him that the option date was soon to expire and Johnson Farms was prepared to deposit the money required to complete our purchase of the balance of the Subject Property. I wanted to know if McEnroe wanted the money ($159,530) deposited in escrow or if the option would be extended. Tom McEnroe told me he would get a hold of his father in Arizona and get back to me to tell me what his father wanted done."

[¶ 6] Later in March 1995, Bert and Al Johnson asked Tom McEnroe what his father had said about extending the option deadline. According to Bert:

> "At that time Tom indicated that he had spoken with his father. Tom told us that McEnroe had not found any farmland which was acceptable to him. He went on to state that McEnroe did not want any money deposited into an escrow account because McEnroe wanted more time to find an acceptable parcel of farmland for

Johnson Farms to purchase which could then be exchanged for the balance of the Subject Property. Tom McEnroe told us that the option wouldn't expire on April 1, rather the option would be extended beyond the April 1 date. Tom McEnroe said when his father got back from Arizona he would get together with us and we could continue to look for a suitable parcel of farmland to buy to exchange with him to complete the original deal."

[¶ 7] After April 1, 1995, George McEnroe returned from Arizona, and the parties continued to look for suitable farmland to exchange. George McEnroe told Bert Johnson he wanted to wait to see if Congress lowered the capital gains tax rate before Johnson Farms could deposit any money in an escrow account. Johnson Farms did not put any money into an escrow account.

[¶ 8] Thinking the sale would be completed, Tim Crary, on behalf of Johnson Farms and Crary Homes, began to plat a part of the remaining property as Prairie View Estates First Addition to Grand Forks. George reviewed and approved the proposed plat on several occasions, and it was given final approval by the Planning and Zoning Commission and the Grand Forks City Council. Johnson Farms spent about $6,500 to have the Prairie View Estates First Addition platted.

[¶ 9] The apparent cooperation between the parties in seeking a successful completion to the second part of the real estate transaction began to sour during summer 1995. Land immediately west of part of the remaining property was considered as a possible location for a new Grand Forks events center. This property was eventually selected as the site for the Aurora. George McEnroe asked Bert Johnson if he would release some of the remaining property from the agreement so George could sell it as commercial property, but Bert refused.

[¶ 10] In January 1996, George and Tom McEnroe met with Bert Johnson and Crary. George told Bert he was no longer interested in completing the transaction and would not convey the balance of the property to Johnson Farms. George explained any rights Johnson Farms had to purchase or acquire the balance of the property expired on April 1, 1995 under the terms of the option.

[¶ 11] In February 1996, Johnson Farms sued the McEnroes seeking specific performance of their oral agreement for the purchase of the property. Johnson Farms asserted partial performance took the transaction out of the statute of frauds. In the alternative, Johnson Farms sought a return of a part of the purchase price originally paid to the McEnroes, because the value of the first property purchased by Johnson Farms and exchanged with the McEnroes had a value greater than the agreed upon price per acre for the entire property.

[¶ 12] In June 1996, the McEnroes moved for summary judgment. George McEnroe argued the option he had given Johnson Farms had expired and was therefore unenforceable. Donna McEnroe asserted the option contract was unenforceable and she was entitled to a homestead exemption under N.D.C.C. § 47–18–01. Johnson Farms responded, asserting the unilateral option was not relevant and, even if it was, Tom McEnroe, as an ostensible agent of the McEnroes, had extended the option. By affidavit, Tom denied holding himself out as an agent for his parents, telling Bert Johnson he would contact his father in Arizona, or that his father would waive the option deadline. By affidavit, George McEnroe asserted he did not authorize Tom McEnroe to be his agent and Tom did not accept an appointment as his agent.

[¶ 13] Johnson Farms argued Donna McEnroe's homestead exemption defense was not relevant because she had consented to the oral contract and had participated in the partial performance by conveying the first part of the property. Johnson Farms also asserted summary judgment could not be granted because, under N.D.R.Civ.P. 56(f), it had not had a reasonable opportunity to conduct discovery.

[¶ 14] The trial court granted the McEnroes' motion for summary judgment. The court ruled "[a]ll negotiations recording the sale of land ... were merged in the deeds exchanged between the parties dated Janu-

ary 18, 1994, conveying tracts of land to ... George G. and Donna McEnroe, in consideration of their conveyance to [Johnson Farms] of 30.61 acres...." The court apparently reasoned this rendered Johnson Farms' allegations of a partially performed oral agreement for the full parcel of McEnroe property irrelevant. The court held the time provided in the option had expired and, as a matter of law, any interest Johnson Farms had to any further conveyance of the remaining property had expired with the option. The trial court also ruled expiration of the option and lack of a "duly executed contract for deed" defeated Johnson Farms' alternative request for money damages. The trial court did not address Johnson Farms' request for additional discovery under N.D.R.Civ.P. 56(f). Johnson Farms appealed.

[¶ 15] Summary judgment is a procedural device for the prompt and expeditious disposition of a controversy without trial if either party is entitled to judgment as a matter of law, if no dispute exists as to either the material facts or the inferences to be drawn from undisputed facts, or if resolving disputed facts would not alter the result. *Ohio Farmers Ins. Co. v. Dakota Agency*, 551 N.W.2d 564, 565 (N.D.1996).

■ [¶ 16] The statute of frauds, N.D.C.C. § 9–06–04, provides an agreement for the sale of real property is invalid unless there is a contract, note, or memorandum in writing subscribed by the party to be charged. In *Erickson v. Wiper*, 33 N.D. 193, 157 N.W. 592 (1916), this Court held the statute of frauds does not apply when one party has fully performed an oral contract for the sale of land. The Court also held the predecessor statute to N.D.C.C. § 9–06–07, governing when a written contract supersedes oral negotiations, was not violated by the admission of parol evidence " 'where the parol contemporaneous agreement was the inducing and moving cause of the written contract, or where the parol agreement forms part of the consideration for a written contract, and where ... the written contract [is executed] upon the faith of the parol contract or representations.' " *Wiper*, 157 N.W. at 596 (quoting *DeRue v. McIntosh*, 26 S.D. 42, 127 N.W. 532, 534 (1910)). The trial court incorrectly

concluded all terms of the parties' overall agreement merged into the initial deeds from the first transaction.

[¶ 17] The McEnroes' reliance on *Radspinner v. Charlesworth*, 369 N.W.2d 109 (N.D. 1985), for the proposition a prior deed cannot be modified because of the parol evidence rule, is misplaced. This is not a case like *Charlesworth* where there was an actual attempt to vary the express terms of a deed. The plaintiffs in *Charlesworth* claimed the defendants had orally agreed to certain restrictions and contingencies regarding a part of the deeded property which were not expressed in the deed. Here, Johnson Farms is not attempting to change or alter the terms of the deed representing the 30.61 acres originally transferred. Rather, Johnson Farms argues the parties had a partially performed oral agreement to purchase the entire 59.17 acres of property. In effect, Johnson Farms seeks to show the first transaction was only the first part of a larger transaction. This argument, ignored by the McEnroes and the trial court, does not conflict with N.D.C.C. § 9–06–07 or *Charlesworth*, and if Johnson Farms can prove the oral agreement falls within an exception to the statute of frauds, it is entitled to specific performance.

■ [¶ 18] One of the exceptions to the statute of frauds' requirement of a signed writing is found in N.D.C.C. § 47–10–01, which allows "any court to compel the specific performance of any agreement for the sale of real property in case of part performance thereof." Cases accepting the doctrine of part performance have recognized three major categories of acts by the purchaser that may make an oral contract enforceable: paying the contract price, taking possession of the property, and making improvements. *See* 14 R. Powell and P. Rohan, *Powell on Real Property* ¶ 880[2][c][i] (1997) (*Powell*).

"Only one of the typically recognized acts of part performance—payment of the contract price—is generally expressly mentioned as a requirement under a contract. The two other most common acts that qualify under the doctrine of part performance—taking possession of the property and making improvements—may occur be-

cause of the existence of the contract, but they are not acts that are literally required for performance of the contract."

*Powell,* ¶ 880[2][a], at p. 81–63 (footnotes omitted). *See also* Restatement of Contracts (First) § 197 (1932) (part performance satisfied if purchaser "(a) makes valuable improvements on the land, or (b) takes possession thereof or retains a possession thereof existing at the time of the bargain, and also pays a portion or all of the purchase price"); *Breen v. Phelps,* 186 Conn. 86, 439 A.2d 1066, 1074 (1982) (possession is not a prerequisite for part performance, but "may be highly significant in establishing the reasonable reliance upon the oral contract which is essential"); *Powell,* ¶ 880[2][c][i], at p. 81–70 ("To be sufficient under the doctrine of part performance, acts must normally combine at least two of the major recognized categories, although occasionally one category alone may be adequate." (footnote omitted)).

[¶ 19] Although cases in this jurisdiction usually rely on the taking of possession and the making of valuable, substantial and permanent improvements to sustain part performance to take an oral agreement out of the statute of frauds, *see, e.g., Vasichek v. Thorsen,* 271 N.W.2d 555, 560 (N.D.1978), we discern no ironclad rule of prerequisites in the cases that conflicts with the broad, flexible approach described in *Powell.* Indeed, our cases may evidence an approach more flexible than *Powell.* We have said partial payment of the purchase price is not necessary to establish part performance. *See Anderson v. Mooney,* 279 N.W.2d 423, 428 (N.D.1979); *Syrup v. Pitcher,* 73 N.W.2d 140, 146 (N.D.1955). Although we have also said partial payment of the purchase price alone will not constitute part performance sufficient to enforce an oral contract, *see Parceluk v. Knudtson,* 139 N.W.2d 864, 871 (N.D. 1966); *Henry S. Grinde Corporation v. Klindworth,* 77 N.D. 597, 44 N.W.2d 417, 424 (1950), we have recognized partial payment considered in connection with other facts, such as the making of substantial improvements, will remove the contract from the statute of frauds. *See Green v. Gustafson,* 482 N.W.2d 842, 848 (N.D.1992). The most important question is whether the part performance "is consistent only with the existence of the alleged oral contract." *Buettner v. Nostdahl,* 204 N.W.2d 187, 195 (N.D.1973), *overruled on other grounds Shark v. Thompson,* 373 N.W.2d 859, 867 (N.D.1985). *See also Williston Co-op. Credit Union v. Fossum,* 459 N.W.2d 548, 551 (N.D.1990).

[¶ 20] The existence of an oral contract is a question of fact. *Wachter Development, L.L.C. v. Gomke,* 544 N.W.2d 127, 132 n. 2 (N.D.1996). Johnson Farms asserts it had an oral contract with the McEnroes to purchase 59.17 acres of property. Johnson Farms alleged it made a partial payment of the agreed purchase price through the Rychart property exchange and improved the property by expending money to have part of the remaining property platted. Johnson Farms alleges it was lulled into failing to place money in escrow by the actions of the McEnroes. We conclude Johnson Farms has raised genuine issues of material fact in support of its allegations of an oral contract and partial performance of that contract to remove it from the statute of frauds. The trial court erred in granting summary judgment on this claim.

[¶ 21] The trial court also erred in dismissing Johnson Farms' alternative claim for money damages from the McEnroes if it is denied specific performance. Johnson Farms alternatively seeks a refund of $97,510 as overpayment for the 30.61 acres it received from the McEnroes when it traded the Rychart property, as well as a refund of the $6,500 it spent to plat Prairie View Estates First Addition.

[¶ 22] The trial court apparently thought the merger doctrine defeated this claim too. The deeds exchanged here said "[f]or and in consideration of the sum of one dollar and other good and valuable considerations." But parol evidence may be admitted to prove the actual consideration differs from that cited in a deed. *E.g., Charlesworth,* 369 N.W.2d at 113. In *Wiper,* 157 N.W. at 596, the Court explained when a conveyance has been executed and accepted under an oral contract for the sale of land, a party can sue for breach of the promise to pay the contract price, because the statute of frauds is inapplicable to an executed agreement. The reason

for the rule is simple. " 'The statute of frauds will not enable one who has accepted a conveyance of land to escape from paying for it simply because the contract of purchase rested in parol.' " *Wiper* (quoting *Galley v. Galley*, 14 Neb. 174, 15 N.W. 318, 319 (1883)). If Johnson Farms does not succeed on its claim for specific performance, it has a claim against the McEnroes for a refund of the difference in value of the amount paid for the Rychart property and the value of the McEnroe property it received in exchange.

[¶ 23] Johnson Farms' affidavits raise a genuine issue of material fact whether the McEnroes received excess compensation for the exchange of the initial 30.16 acres of land under the parties' oral agreement. The trial court erred in granting summary judgment against Johnson Farms on this claim.

[¶ 24] Johnson Farms asserts the trial court erred in ruling its right to complete the transaction terminated with the expiration of the option. Johnson Farms argues it has raised a genuine issue of material fact whether Tom McEnroe was an ostensible agent of the McEnroes, under N.D.C.C. § 3–01–03, who extended the option. Johnson Farms also argues, if the oral contract is enforceable, expiration of the unilateral option is irrelevant because under N.D.C.C. § 9–07–22 the balance of the agreement could be performed within "a reasonable time." The McEnroes assert Johnson Farms has not presented "clear and specific evidence" Tom was an ostensible agent of the McEnroes, and in any event, under N.D.C.C. § 9–06–04, Tom's authority as an agent would have to be in writing and "there is no writing or documentation relating to the claim of agency."

[¶ 25] The trial court agreed with the McEnroes, reasoning:

"There is no evidence before the Court to show that George McEnroe had authorized Tom to effect any extension of the option. Even if that were true that Tom McEnroe was then acting as agent for his father and the extension of the option right were to have been within Tom McEnroe's authority to grant in behalf of his father, such agreement as well as the authority of Tom as such agent, to be binding, would both have to have been in writing in the form

and executed as required by the Statute of Frauds. Sec. 9–06–04(3), N.D.C.C. No such written agreement extending the term of the option, nor written authority to Tom McEnroe from his father, has been alleged or shown to have ever existed."

[¶ 26] This Court has not been hesitant to apply the statute of frauds in a manner to avoid its use as an instrument to commit fraud. *See, e.g., Signal Management Corp. v. Lamb*, 541 N.W.2d 449, 454 (N.D.1995) (notwithstanding N.D.C.C. § 9–06–04(3), the exercise of an option, and the authority of an agent to exercise it, are not required to be in writing). We decline to address the McEnroes' argument in this appeal. It would be premature for us to resolve at this point in the proceedings the various legal issues concerning the effect of the purported termination of the written option.

[¶ 27] Trial courts may refuse an application for summary judgment and allow further time for discovery "[s]hould it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition...." N.D.R.Civ.P. 56(f). As explained in 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 2d* § 2740, at p. 532 (1984) (footnotes omitted), "[t]he purpose of subdivision (f) is to provide an additional safeguard against an improvident or premature grant of summary judgment and the rule generally has been applied to achieve that objective. Consistent with this purpose, courts have stated that technical rulings have no place under the subdivision and that it should be applied with a spirit of liberality."

[¶ 28] In a highlighted section of its trial court brief, Johnson Farms made a request for additional discovery under N.D.R.Civ.P. 56(f):

"Subsection (f) of Rule 56 of the North Dakota Rules of Civil Procedure provides that a court may grant an extension of time to conduct additional discovery prior to ruling on a motion for summary judgment. In the present case the Plaintiff[ ] attempted to schedule the Defendants de-

positions on at least two (2) occasions. At the request of the Defendants' counsel the depositions were postponed on both occasions. Thereafter, the defendant[s] initiated discovery to which the plaintiff responded. The plaintiff then served interrogatories and discovery requests which were partially answered on July 17th. While the plaintiff's outstanding discovery was pending, and before the plaintiff[ ] ha[s] had an opportunity to take the depositions of the defendants, the defendants filed their current motions for summary judgment. Pursuant to Rule 56(f) the Court should grant additional time to allow the plaintiff[ ] to take the depositions of the defendants and to require the defendants completely answer the plaintiff's outstanding discovery requests."

[¶ 29] The trial court's decision does not mention Johnson Farms' request for time to pursue further discovery. If the trial court's reason for denying the request is because it was not made in affidavit form, that reason is not apparent from the decision and, in any event, would be a technical application of a rule that should be applied with a spirit of liberality. *Compare Hummel v. Mid Dakota Clinic, P.C.,* 526 N.W.2d 704, 708 (N.D.1995) (Court reviewed trial court brief in determining sufficiency of N.D.R.Civ.P. 56(f) request). *See also Littlejohn v. Shell Oil Co.,* 483 F.2d 1140, 1146 (5th Cir.), *cert. denied,* 414 U.S. 1116, 94 S.Ct. 849, 38 L.Ed.2d 743 (1973) ("It is true that this representation was not in affidavit form by plaintiff in person but we think that the written representation by his lawyer [in the brief opposing summary judgment], an officer of the court, is in the spirit of Rule 56(f) under the circumstances. Form is not to be exalted over fair procedures."); *Smith v. Community Fed. S. & L. Ass'n of Tupelo,* 77 F.R.D. 668, 670–671 (N.D.Miss. 1977) (same). There is no indication the trial court believed Johnson Farms had been dilatory, had made the request in bad faith, or had made it for purposes of delay.

[¶ 30] Johnson Farms' request was sufficient to put the trial court on notice it needed more time for discovery. When a N.D.R.Civ.P. 56(f) request is made, "the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just." Johnson Farms' request for additional time for discovery in defense to the summary judgment motion was ignored by the trial court. The court then based the grant of summary judgment against Johnson Farms in part because no documentary evidence to support its position "has been alleged or shown to have ever existed." We conclude the trial court erred in failing to allow Johnson Farms further time for discovery before ruling on the summary judgment motion.

[¶ 31] We reverse the summary judgment and remand to allow Johnson Farms an opportunity for further discovery, and then, for trial on the disputed issues of material fact.

[¶ 32] VANDE WALLE, C.J., MARING and MESCHKE, JJ., and MICHAEL O. McGUIRE, District Judge, concur.

[¶ 33] MICHAEL O. McGUIRE, District Judge, sitting in place of SANDSTROM, J., disqualified.