2004 ND 118

**Lonnie FLADELAND and Pamela Fladeland, Plaintiffs and Appellees**

v.

**Kaye GUDBRANSON and Carl Erickson, Trustees of the Kaye Gudbranson Living Trust and Deborah Baklenko and Larry Baklenko, Trustees of the Deborah Baklenko Living Trust, Defendants and Appellants.**

No. 20030319.

Supreme Court of North Dakota.

June 7, 2004.

Peter H. Furuseth, Furuseth Law Firm, P.C., Williston, ND, for plaintiffs and appellees.

Monte L. Rogneby (argued), Vogel Law Firm, Bismarck, ND, and R. James Maxson (appeared), Maxson Law Office, Minot, ND, for defendants and appellants.

VANDE WALLE, Chief Justice.

[¶ 1] Kaye Gudbranson and Carl Erickson, trustees of the Kaye Gudbranson living trust, and Deborah and Larry Baklenko, trustees of the Deborah Baklenko living trust, ("Trustees") appealed a district court judgment requiring them to convey property to Lonnie and Pamela Fladeland ("Fladelands"). We reverse.

I

[¶ 2] In May 1991, Joseph Gudbranson ("Gudbranson") purchased approximately 4,014 acres of land ("Strobeck land") in Mountrail County from Steven, Karen, and Kristine Strobeck for $337,000. The Strobecks inherited the land from their father, Aldon Strobeck. Lonnie Fladeland had been working on the land since 1978, and he and his wife, Pamela, began residing on the land in 1979. They continued working and residing on the land after the sale. In April 1993, Gudbranson purchased another 280 acres of land ("Feehan land") south of the Strobeck land for $47,000. Since the purchases, the Fladelands have farmed and ranched the combined tracts of land (collectively referred to as "the ranch").

The Fladelands made semi-annual payments to Gudbranson for their use of the ranch, but there was no written agreement concerning their use of the property. Gudbranson, and later his daughters, paid the real estate taxes on the land, while the Fladelands paid for the necessary insurance for their farming and ranching operation. In January 1994, Gudbranson died and the ranch passed to his daughters, Kaye Gudbranson and Deborah Baklenko. There were two failed attempts to sell the ranch to the Fladelands between 1994 and 2002, and the parties' existing relationship continued until March 11, 2002, when they entered into a written cash farm lease. Title to the ranch was subsequently transferred to the daughters' respective living trusts.

[¶3] On March 22, 2002, the Fladelands initiated a specific performance action against the Trustees, alleging they and Gudbranson entered into an oral contract for the sale of the ranch to the Fladelands for the purchase price at zero percent interest. The Fladelands alleged the semi-annual payments were to be applied toward the purchase price, along with a portion which was used to pay the real estate taxes. The Trustees denied the existence of an oral contract, and asserted statute of frauds, laches, and statute of limitations defenses. After a bench trial, the trial court found Gudbranson purchased the ranch on behalf of the Fladelands and ordered the Trustees to convey title to the Fladelands in exchange for $109,729.70, the unpaid balance of the purchase price.

[¶4] The parties disputed whether Gudbranson purchased the ranch with the intent to lease it to the Fladelands or whether he purchased it to allow the Fladelands an opportunity to acquire the land. Testimony at trial indicated the Fladelands never asserted the oral contract existed in response to the daughters two attempts to sell the ranch to them. The deposition of Aldon Strobeck's estate attorney, Fred Whisenand, was also admitted at trial. His notes from a conversation with Steven Strobeck indicated the following:

> Telephone conference with Steve Strobeck 3/22–91
>
> He is going to sell the Ranch
>
> They had it appraised by Don Bintliff for $337,000—
>
> 2000 earnest money
>
> It is going to be a cash sale
>
> Lonnie Fladeland the long time tenant
>
> Actually, Mr. Joe Gudbranson from NewTown
>
> is going to put up the money
>
> and will back the purchase
>
> All mineral reserved

Along with the Fladelands' testimony, the trial court considered the evidence from Whisenand's deposition as the "clincher" on the issue of whether Gudbranson orally agreed to sell the ranch to the Fladelands.

[¶5] The trial court found an oral contract existed between Gudbranson and the Fladelands. It found the terms were: "1. *'The Strobeck land'*: (a) $337,000.00 purchase price; (b) no money down; (c) no interest; (d) annual lease payments in an unspecified amount, to be applied against the principal; and, (e) reimbursement of real estate taxes paid by Joe Gudbranson at time of payoff." Its findings for the Feehan land were identical except the purchase price was $47,000. The Fladelands' total lease payments over the term of the contract were $331,785.86 and the real estate taxes paid by Gudbranson and his daughters were $57,515.56. These figures were used to arrive at the $109,729.70 remaining principal balance to be paid by the Fladelands. The trial court found the Strobecks would not have sold the land to

Gudbranson if the Fladelands were not destined to become the owners of the property, and that Gudbranson intended to give the Fladelands "a very good deal."

[¶ 6] On appeal, the Trustees allege the trial court erred by finding Gudbranson and the Fladelands entered into contracts for deed and not leases with options; the alleged oral leases and options were canceled by the parties when the cash farm lease was executed in 2002; and the alleged oral contracts violated the statute of frauds. We need only address the statute of frauds issue because it is dispositive of this case.

## II

[¶ 7] In an appeal from a bench trial, the trial court's findings of fact are reviewed under the clearly erroneous standard of N.D.R.Civ.P. 52(a) and its conclusions of law are fully reviewable. *Fargo Foods, Inc., v. Bernabucci,* 1999 ND 120, ¶ 10, 596 N.W.2d 38. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after reviewing all the evidence, we are left with a definite and firm conviction a mistake has been made. *Moen v. Thomas,* 2001 ND 95, ¶ 19, 627 N.W.2d 146. "In a bench trial, the trial court is 'the determiner of credibility issues and we do not second-guess the trial court on its credibility determinations.'" *Id.* at ¶ 20.

[¶ 8] The statute of frauds provides that an agreement for the sale of real property is "invalid, unless the same or some note or memorandum thereof is in writing and subscribed by the party to be charged, or by his agent." *Kuntz v. Kuntz,* 1999 ND 114, ¶ 10, 595 N.W.2d 292 (quoting N.D.C.C. § 9–06–04). It is intended to prevent fraud and perjury and should not be used as an instrument to accomplish fraud. *Mellon v. Norwest*

*Bank of Mandan,* 493 N.W.2d 700, 704 (N.D.1992). Absent a written contract or agreement, N.D.C.C. § 47–10–01 allows a "court to compel the specific performance of any agreement for the sale of real property in case of part performance thereof." "The most important question is whether the part performance 'is consistent only with the existence of the alleged oral contract.'" *Johnson Farms v. McEnroe,* 1997 ND 179, ¶ 19, 568 N.W.2d 920 (quoting *Buettner v. Nostdahl,* 204 N.W.2d 187, 195 (N.D.1973), *overruled on other grounds Shark v. Thompson,* 373 N.W.2d 859, 867 (N.D.1985)). Valuable, substantial, and permanent improvements may be considered part performance, removing an oral contract from the statute of frauds. *Green v. Gustafson,* 482 N.W.2d 842, 848 (N.D.1992) (quoting *Williston Cooperative Credit Union v. Fossum,* 459 N.W.2d 548, 551 (N.D.1990)). However, "[i]f the improvements indicate some other relationship, such as landlord and tenant, or can be accounted for through the application of some other hypothesis, they are not sufficient" to constitute part performance removing the contract from the statute of frauds. *Robar v. Ellingson,* 301 N.W.2d 653, 661 (N.D.1981).

[¶ 9] In *Johnson Farms,* we recognized the following three general categories of acts by a purchaser that may make an oral contract enforceable: "paying the contract price, taking possession of the property, and making improvements." 1997 ND 179, ¶ 18, 568 N.W.2d 920.

Although cases in this jurisdiction usually rely on the taking of possession and the making of valuable, substantial and permanent improvements to sustain part performance to take an oral agreement out of the statute of frauds, we discern no ironclad rule of prerequisites in the cases that conflicts with the broad, flexible approach described in [14

R. Powell and P. Rohan, *Powell on Real Property* ¶ 880[2] (1997)]. Indeed, our cases may evidence an approach more flexible than *Powell*. We have said partial payment of the purchase price is not necessary to establish part performance. Although we have also said partial payment of the purchase price alone will not constitute part performance sufficient to enforce an oral contract, we have recognized partial payment considered in connection with other facts, such as the making of substantial improvements, will remove the contract from the statute of frauds.

*Id.* at ¶ 19 (citations omitted). In this case, the trial court concluded the following evidence removed the alleged oral contract from the statute of frauds.

1. Fladelands have made regular semi-annual payments under the oral contracts, totaling $331,785.86; 2. Fladelands have resided on the ranch since 1979, and have been in exclusive possession of the same since 1991 (the "Strobeck land")/1993 (the "Feehan land"); 3. Fladelands have made substantial, valuable and permanent improvements to the ranch during their occupancy; 4. Fladelands have paid for all necessary insurance coverage for the farming/ranching operation they've conducted on the property during their occupancy; and, 5. Fladelands have obligated themselves to make reimbursement for the total amount of money expended by Joe Gudbranson and his estate in payment of real estate taxes assessed against the property during Fladelands' occupancy.

■ [¶ 10] Lonnie Fladeland testified that there was not a contract for deed but rather "a lease option to buy out the principal balance at zero interest at any time [he] was ready less the real estate taxes that had been paid." The partial perform-ance relied upon by the trial court to remove the alleged oral contract from the statute of frauds in this case is not consistent only with the alleged agreement. The semi-annual payments and possession by the Fladelands are consistent with a contract for deed and a lease, with or without an option to purchase. The insurance payments made by the Fladelands are also not consistent only with the alleged contract because the Fladelands did not share agricultural profits with Gudbranson.

■ [¶ 11] We have "determined that in cases where improvements are relied upon as constituting part-performance, the improvements must unmistakably point to the existence of the claimed agreement. If the improvements indicate some other relationship, ... or can be accounted for through the application of some other hypothesis, they are not sufficient." *Robar*, 301 N.W.2d at 661. The improvements relied upon in this case do not unmistakably point to the existence of the alleged oral contract. The Fladelands relied on the following improvements to remove the alleged oral contract from the statute of frauds:

(a) a tack room and pens, with a cement floor;

(b) a well with a 3/4 HP sump pump and two (2) pressure tanks;

(c) a deck, a new sewer line and a new water line for Troy Fladeland's mobile home;

(d) a new water line, a cement pad and an automatic waterer for the pole barn;

(e) a new water hydrant in the wood-frame barn, a new electric motor in the pump house and a new Ritchie automatic waterer in the corral;

(f) a 250′ windbreak constructed out of lumber purchased by Fladelands;

(g) paint purchased by Fladelands and used by them to paint the house, quonset, bunk house and barn;

(h) a coal furnace in the garage;

(i) new shingles purchased by Fladelands and used by them to re-shingle the roof of the house;

(j) a 20' cattle guard, along with several steel gates;

(k) improvements made to the interior of the house, including: a new door in the bathroom; wallpapering; ceiling fans and painting;

(l) a new sewer stack for the house;

(m) installation of waterways;

(n) 110 acres of land seeded to alfalfa;

(o) a large number of trees planted by Fladelands, and fencing constructed to protect the same;

(p) installation of water tanks (and pumps);

(q) construction of a 150' X 275' roping arena;

(r) posts, wire, planks and any other lumber and fencing supplies used to construct and maintain fences on the property; and,

(s) money expended on blading and rebuilding roads.

[¶ 12] These improvements, while numerous, are not consistent only with the alleged oral contract. Many of the improvements were made in conjunction with the Fladelands' farming and ranching operation and are consistent with a lease without an option to purchase. Additionally, the tack room and roping arena were installed as a result of the Fladelands' rodeo activities. It is not consistent only with the alleged oral contract for the Fladelands to pay for improvements used to engage in their own interests or hobbies. In fact, the improvements are consistent with the Fladelands' conduct before any alleged option to purchase existed.

Steven Strobeck stated in his deposition, which was admitted into evidence at trial, that "Lonnie [Fladeland] moved [to the ranch] with his family and really fixed the place up, made it look a lot more cozy, moved his furniture around, did some things; but he treated the ranch like it was his own home, even at that time." Although the record does not indicate the extent of these improvements, Strobeck's testimony is evidence that the Fladelands made improvements to the ranch even before Gudbranson purchased the property and the alleged option to purchase came into existence. Taken as a whole, the improvements, when considered with the other evidence presented at trial, are not consistent only with the alleged oral contract and do not unmistakably point to the existence of an option to purchase.

[¶ 13] In concluding the alleged contract was outside the statute of frauds, the trial court also relied on the Fladelands' assertion that they would be obligated to reimburse Gudbranson or the Trustees for the property taxes they paid. However, this alleged contract term does not indicate partial performance removing the oral contract from the statute of frauds.

[¶ 14] The alleged oral contract is not removed from the statute of frauds because there was not partial performance consistent only with the existence of the alleged contract. This situation is precisely the type of conflict sought to be avoided by the statute of frauds, and we are left with a definite and firm conviction the trial court erred in determining the alleged oral contract is removed from the statute of frauds.

[¶ 15] Accordingly, we reverse the district court judgment requiring the Trustees to convey the ranch to the Fladelands.

[¶ 16] DALE V. SANDSTROM, WILLIAM A. NEUMANN, MARY MUEHLEN MARING, JJ., and WILLIAM F. HODNY, S.J., concur.

[¶ 17] The Honorable WILLIAM F. HODNY, S.J., sitting in place of KAPSNER, J., disqualified.