Richard E. RADSPINNER and Irene R. Radspinner, Plaintiffs and Appellants,

v.

Fay W. CHARLESWORTH and Eva Charlesworth, Defendants and Appellees.

Warren CHARLESWORTH, Plaintiff and Appellee,

v.

Richard E. RADSPINNER and Irene R. Radspinner, Defendants and Appellants.

Civ. Nos. 10473, 10474.

Supreme Court of North Dakota.

March 21, 1984.

Mills & Moore, Bismarck, for plaintiffs and appellants; argued by William R. Mills, Bismarck.

Baer & Asbridge, Bismarck, for defendants and appellees; argued by Richard B. Baer, Bismarck.

GIERKE, Justice.

Richard and Irene Radspinner [Radspinners] appeal from the judgment entered by the District Court of Burleigh County on April 21, 1983. We vacate the judgment and remand for further findings of fact and conclusions of law.

The Radspinners were, prior to 1982, long-time friends of Fay and Eva Charlesworth [Charlesworths]. The Radspinners owned and lived on a tract of land south of Bismarck. In an effort to have the Charlesworths build a home nearby, the Radspinners gifted a one-acre portion of their land to the Charlesworths by warranty deed dated September 13, 1979. The deed contained no reservations or restrictions. Upon being informed that an additional one-half acre would be needed for sewage purposes before a building permit could be issued for construction of a home on the site, the Radspinners gifted an additional one-half acre to the Charlesworths. The transfer was by warranty deed dated December 18, 1980, and was again without reservations or restrictions. In May of 1981, the parties executed a mutual access easement, each granting to the other an easement over the north thirty feet of their respective properties.

In December, 1981, at the Radspinners' annual Christmas party, Richard Radspinner overheard Eva Charlesworth mention that the Charlesworths were considering selling the property. The friendship between the Radspinners and Charlesworths quickly degenerated into a series of arguments and threats over the property. In February, 1982, the Charlesworths deeded the property to their son, Warren Charlesworth.

The Radspinners filed suit against the Charlesworths in March of 1982, claiming fraud and breach of contract. The Radspinners claimed that there was an oral agreement between the parties that the Charlesworths were to sell the land back to the Radspinners if they did not build on it, that the Charlesworths were not to build on or sell a portion of the property referred to as "the park" during the Radspinners' lifetimes, and that the Radspinners were to have use of "the park." The Charlesworths deny the existence of such an agreement, but do admit that there was an agreement that "the park" would not be built upon and that the families would use it as a park. Warren Charlesworth brought a separate action against the Radspinners alleging slander of title and interference with use of the property. The actions were consolidated and tried to the court without a jury.

The court held that Warren owned the disputed property in fee simple with no restrictions. The court awarded the Radspinners $100 as damages against Warren for their expense in removing brush and large stumps placed on their land by Warren when he cleared the roadway across the easement. The court dismissed the parties' other claims.

The Radspinners have raised numerous issues on appeal. We are unable to reach the merits, however, because we conclude that the findings of fact and conclusions of law, contained in the court's memorandum opinion, fail to provide a clear understanding of the basis of the court's decision and require remand for further findings and conclusions.

■ There are several inconsistencies within the memorandum opinion. For example, the court at one point states:

"The Radspinners, however, claim there exists an enforceable agreement as follows:

1. that the Charlesworths agreed not to build on part of the property referred to by the Radspinners as 'the park';

2. that the Radspinners could use 'the park' for their lifetime;

3. that the Charlesworths would not sell the property during the Radspinners' lifetimes;

4. that the Charlesworths would sell the property back to the Radspinners if they did wish to sell. (This condition was not referred to in the pleadings or the pretrial brief.)

"As noted, none of these matters are claimed to be in writing, and the Charlesworths objected to the oral testimony regarding them. The testimony was taken subject to later ruling. The Charlesworths deny the existence of any such oral conditions and restrictions, with one exception: They did agree with the Radspinners that they would not build in 'the park.' No building has occurred there, nor has anyone threatened to build there."

After holding that the oral testimony regarding such agreements was inadmissible, the court further concluded:

"Even assuming the evidence was admissible, I would not be persuaded that the Radspinners had proved the existence of such additional terms and conditions on the deed by a preponderance of the evidence. The evidence is sharply in dispute, and I find nothing about the testimony which causes me to conclude that the testimony of one side or the other should be rejected because it is not credible."

The first passage quoted above indicates that there was an agreement regarding the park; the second states that the Radspinners failed to prove the existence of such an agreement.[1]

There is also an inconsistency between the memorandum opinion and the judgment. In the memorandum opinion, the court states that the parties "executed a mutual access easement." In the judgment, however, Warren Charlesworth is deemed to be the owner of the disputed property "without reservations or encumbrances of any kind in favor of Richard E. and Irene R. Radspinner." Thus, the judgment appears to terminate the Radspinners' written, undisputed easement.

The Radspinners also argued at trial that a resulting or constructive trust could be imposed upon the property requiring the Charlesworths to hold "the park" in trust for the Radspinners' lifetime use. The trial court's findings and conclusions on this issue, in their entirety, were contained in one sentence: "The evidence submitted by the Radspinners did not support any kind of claim of resulting trust, nor was there a confidential relationship of any kind between the families."[2] There is a vast dif-

---

1. We note that the court initially held that evidence of the oral agreement was inadmissible under the parol evidence rule. While the parol evidence rule may bar enforcement of the agreement itself, it would not bar consideration of the oral agreement as a basis for imposing a constructive trust. A constructive trust may be imposed upon land based upon prior oral agreements, notwithstanding the statute of frauds and the parol evidence rule, when the requisites of Section 59–01–06, N.D.C.C., are met. *See Wildfang-Miller Motors, Inc. v. Miller*, 186 N.W.2d 581, 585 (N.D.1971). The court failed to address the constructive trust issue in its memorandum opinion, *see infra* note 2, and, when the court did subsequently address the issue in supplementary findings, it did not mention the admissibility of this evidence. We are therefore unable to determine whether the court denied the constructive trust because evidence of the oral agreement was inadmissible or because the Radspinners had failed to prove the requisite elements under Section 59–01–06, N.D.C.C.

2. The court's findings on this issue cause additional problems. The court failed to address this issue in its memorandum opinion. When this was brought to the court's attention by Charlesworths' counsel, the court replied with a letter to counsel containing supplemental findings and conclusions on this issue. This letter is not included in the record certified on appeal, although a copy of the letter is included in the appendix filed by the appellant. We therefore have no way of knowing whether or not these supplemental findings have ever been formally filed in the district court. Because we are remanding for clarification of the findings and

ference between a constructive trust and a resulting trust. The court did not differentiate between the two theories, and we are unable to determine from the court's findings whether the appropriate standards were applied.

Furthermore, the court's findings on this issue are conclusory. In *Eszlinger v. Wetzel*, 326 N.W.2d 215, 217 (N.D.1982), we quoted with approval the following language of the United States Supreme Court:

" 'To be sure, conciseness is to be strived for, and prolixity avoided, in findings; but, ... there comes a point where findings become so sparse and conclusory as to give no revelation of what the District Court's concept of the determining facts and legal standard may be.' *Commissioner v. Duberstein*, 363 U.S. 278, 292, 80 S.Ct. 1190, 1200, 4 L.Ed.2d 1218 (1960)."

Conclusory, general findings do not comply with the mandate of Rule 52. *Eszlinger, supra*, 326 N.W.2d at 217. The trial court must specifically state the subordinate facts upon which its ultimate factual conclusions rest. *See, e.g., Ruiz v. Estelle*, 679 F.2d 1115, 1133 (5th Cir.), *modified on other grounds*, 688 F.2d 266 (5th Cir.1982), *cert. denied*, —— U.S. ——, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983); *H. Prang Trucking Co. v. Local Union No. 469*, 613 F.2d 1235, 1238 (3rd Cir.1980).[3] The court's findings regarding the constructive trust issue fail to meet the standard of specificity required by Rule 52.

Findings of fact and conclusions of law should be stated with sufficient specificity to assist us in our review and to afford a clear understanding of the trial court's decision. *Gross v. Sta-Rite Industries, Inc.*, 322 N.W.2d 679, 682 (N.D.1982). Because of the inconsistencies in the memo-

randum opinion and the judgment, and the conclusory nature of some of the court's findings, we have not been provided with a clear understanding of the basis for the court's decision in this case. When we are unable to determine the factual and legal bases for the court's ultimate conclusions, our review function cannot be properly performed. *See VanRosendale v. VanRosendale*, 333 N.W.2d 790, 792 (N.D.1983); *Tuff v. Tuff*, 333 N.W.2d 421, 424 (N.D.1983); *Martin v. Martin*, 304 N.W.2d 697, 698 (N.D.1981); *see also Hydrospace-Challenger, Inc. v. Tracor/MAS, Inc.*, 520 F.2d 1030, 1035 (5th Cir.1975). Under these circumstances, the proper procedure is to vacate the judgment and remand for new findings of fact and conclusions of law. *See, e.g., Clark v. Marsh*, 665 F.2d 1168, 1172 (D.C.Cir.1981); *SquirtCo v. Seven-Up Co.*, 628 F.2d 1086, 1092 (8th Cir.1980); *H. Prang Trucking Co., supra*, 613 F.2d at 1238; *Schilling v. Schwitzer-Cummins Co.*, 142 F.2d 82, 83 (D.C.Cir.1944).

We vacate the judgment and remand to the district court to make appropriate findings of fact and conclusions of law.[4]

ERICKSTAD, C.J., and PEDERSON, VANDE WALLE and SAND, JJ., concur.

---

conclusions, it is not necessary for us to address this issue.

3. When construing Rule 52, N.D.R.Civ.P., which was adopted from Rule 52 of the Federal Rules of Civil Procedure, we are guided by federal case law interpreting the federal rule. *Byron v. Gerring Industries, Inc.*, 328 N.W.2d 819, 821 n. 3 (N.D.1982).

4. It is anticipated that the district court will be able to draw its new findings of fact and conclusions of law based upon the evidence already submitted. The court may, however, conduct any further proceedings it deems necessary to fully resolve the issues presented.