2000 ND 137

**JOHNSON FARMS, a general partnership, Plaintiff, Appellant and Cross–Appellee,**

v.

**George G. McENROE and Donna McEnroe, Defendants, Appellees and Cross–Appellants.**

**No. 990297.**

Supreme Court of North Dakota.

July 3, 2000.

Douglas A. Christensen, Pearson Christensen, Grand Forks, for plaintiff, appellant, and cross-appellee.

Robert Vaaler, Vaaler, Zimney, Foster & Johnson, Grand Forks, for defendants, appellees, and cross-appellants.

MARING, Justice.

[¶ 1] Johnson Farms, a general partnership, appealed from a judgment dismissing its action against George and Donna McEnroe for specific performance of an oral agreement for the purchase of real property, but awarding Johnson Farms $91,930 it overpaid the McEnroes for an adjacent parcel of property Johnson Farms purchased in January 1994. The McEnroes cross-appealed from the part of the judgment awarding Johnson Farms $91,930 plus interest. We conclude the trial court's pivotal findings of fact in this case are inconsistent and incapable of reconciliation. We reverse and remand for a new trial on all issues.

I

[¶ 2] The factual background of this case is detailed in *Johnson Farms v. McEnroe,* 1997 ND 179, 568 N.W.2d 920. In that case we reversed a summary judgment in favor of the McEnroes dismissing Johnson Farms' action for specific performance of an oral agreement to convey 59.17 acres of land adjacent to Grand Forks because there were genuine issues of material fact to be resolved at trial. Johnson Farms claimed it orally agreed in 1993 to purchase 59.17 acres from the McEnroes for $9,000 per acre, or $532,530. The parties agreed to structure the transaction as a "like-kind" property exchange under 26 U.S.C. § 1031 so the McEnroes could avoid paying capital gains taxes. According to Johnson Farms, the initial transaction occurred when it purchased land from Bill and Pamela Rychart for $373,000 and exchanged it for 30.61 acres of the McEnroes' property in January 1994. Johnson Farms then owed McEnroe $159,530 for the remaining acreage, and the parties began to look for additional property to complete the transaction. In February 1994, George McEnroe executed an option giving Johnson Farms until April 1, 1995 to either deposit $159,530 in escrow or provide suitable "like-kind" property to complete the transaction. Johnson Farms argued even though the option was invalid, it nevertheless evidenced the overarching oral agreement between the parties. Johnson Farms claimed that before suitable property could be found, McEnroe breached the agreement and refused to complete the balance of the transaction. Johnson Farms argued the statute of frauds was no bar to its action against the McEnroes because it had partially performed the overarching agreement.

[¶ 3] The McEnroes argued no oral agreement existed for the sale of the entire 59.17 acres of property for $9,000 per acre. The only agreement between the parties, according to the McEnroes, was the completed "like-kind" property transaction involving the 30.61 acres exchanged for the Rychart property. The McEnroes admitted George McEnroe granted Johnson Farms a unilateral written option,

which was actually an offer of the right to obtain the second tract of land. Whether the option was valid is immaterial, according to the McEnroes, because Johnson Farms never tendered suitable "like-kind" property to exchange, or deposited $159,530 in escrow, either within the time limitation contained in the option or afterward. During this time period, closure of the Grand Forks Air Force Base was a possibility, and the McEnroes argued it was only after retention of the base was secured and land immediately west of the subject property was chosen as the site for the new Aurora Events Center that Johnson Farms' interest in the remaining tract was kindled.

[¶ 4] Following a bench trial on remand, the trial court ruled Johnson Farms was not entitled to specific performance compelling the McEnroes to convey the remainder of the 59.17 acre tract of land, but also ruled Johnson Farms was entitled to $91,930 from the McEnroes for "overpayment" of the initial exchange of 30.61 acres in January 1994.

> [T]he only oral contract that ever existed between the parties, that is material to this case, is their oral agreement by which Johnson Farms agreed to exchange the Rychart property it purchased in November of 1993 for 30.61 acres of property described above. The Court further finds that the oral agreement for such exchange included an agreement of the parties that the property exchanged by the Defendants had an agreed value of $9,000 per acre, and that the Plaintiff intended to convey to the Defendants in exchange for Defendants' property a tract of land having a value corresponding to the 30.61 acres of the Defendants' land valued at $9,000 per acre.
>
> [T]he tract of land traded by the Defendants to the Plaintiff pursuant to the oral agreement between the parties was valued at the agreed price of $9,000 per acre, or a value of $281,070.00. The price paid by the Plaintiff for the Rychart property traded to the Defendant George McEnroe was $373,000.00, $91,930.00 more than the agreed value of the land traded by Defendants to Plaintiff for said property. This constituted an overpayment by the Plaintiff of $91,-930.00.
>
> [E]xcept for the trade of property between the parties in January of 1994, pursuant to the oral contract as found by the Court, no other contract for the purchase or sale of land between the parties, oral or written, was entered into. The Plaintiff contending for such an oral contract of purchase and sale of property, has wholly failed to sustain the burden of proof that such an oral contract ever existed between the parties with respect to the sale by the Defendant McEnroes to the Plaintiff Johnson Farms of all or any part of the property owned by George McEnroe, except the tract that was traded by the Defendants to the Plaintiff on January 18, 1994.

[¶ 5] Judgment was entered dismissing Johnson Farms' action for specific performance and ordering that McEnroes pay Johnson Farms $91,930, plus interest from December 14, 1998, which was the date of the final submission of the case to the court for decision. Both parties appealed.

II

[¶ 6] Johnson Farms argues the trial court erred in finding there was an agreement only for the initial exchange of land for the Rychart property in January 1994 because the evidence establishes this transaction was part of an overarching agreement for the sale of the entire 59.17 acres, and Johnson Farms partially performed the oral agreement, taking it out of the statute of frauds. Johnson Farms also argues the trial court miscalculated the amount it overpaid the McEnroes for the initial conveyance of 30.61 acres, and contends it should be awarded interest from January 19, 1994, the date the parties exchanged deeds. In their cross-appeal, the McEnroes argue the trial court erred in

finding Johnson Farms overpaid them for the 30.61 acres of land because there is no evidence the parties agreed to a $9,000 per acre price as part of the Rychart property exchange. The McEnroes also argue the trial court erred in failing to dismiss Donna McEnroe from the action because she did not participate in any of the discussions between the parties concerning the disputed property. Both parties also complain about internal inconsistencies in the trial court's findings of fact.

[¶ 7] We agree the trial court's findings in this case are not consistent. Johnson Farms' theory throughout these proceedings has been the McEnroes orally agreed in 1993 to sell to Johnson Farms 59.17 acres of land for $9,000 per acre, or for a total purchase price of $532,530. Part of the evidence relied on by Johnson Farms to support its argument an overarching agreement existed is that when the $373,000 Johnson Farms paid for the Rychart property it exchanged for the 30.61 acres of the McEnroes' property is added to the $159,530 called for by the option for the remainder of the 59.17 acres, the total sum is $532,530, or $9,000 per acre for the entire 59.17 acre tract. The trial court, however, flatly rejected the contention that the parties reached an oral agreement for the sale of the entire 59.17 acre tract. The trial court found that during summer 1993, George McEnroe offered to sell the approximately 60 acre tract to Johnson Farms for $10,000 per acre, but Johnson Farms, through a partner, Bert Johnson, would pay only $9,000 per acre. The trial court found "the transaction was abandoned" and "the prior negotiations between the parties with respect to the sale of a 60 acre tract of land by McEnroe" was "nullified."

[¶ 8] Instead, the trial court found "the only oral contract that ever existed between the parties, that is material to this case, is their oral agreement by which Johnson Farms agreed to exchange the Rychart property it purchased in November of 1993 for 30.61 acres of property," and the property exchanged by the McEnroes "had an agreed value of $9,000 per acre." The McEnroes argue there is no evidence the parties negotiated a purchase price of $9,000 per acre for the 30.61 acres exchanged for the Rychart property, but only negotiated how much land to trade for the Rychart property. According to the McEnroes, if the parties had agreed on a $9,000 per acre price, Johnson Farms would have received 41.44 acres of land for the Rychart property. The McEnroes argue this establishes the January 1994 transaction was simply a "like-kind" property exchange without regard to a per acre price, and there was no $91,930 overpayment by Johnson Farms for the 30.61 acres.

[¶ 9] Johnson Farms agrees there is no evidence to support a $9,000 per acre price for the January 1994 transaction alone, but contends the $9,000 price per acre figure can only be reached by considering the January 1994 transaction as the first of a two-part overarching agreement for the purchase of the entire 59.17 acres of property. Johnson Farms argues if the January 1994 transaction was a totally separate transaction, the $373,000 it paid for the Rychart property and exchanged for the McEnroes 30.61 acres would have resulted in a $12,185.56 per acre purchase price, when Johnson Farms had offered only $9,000 per acre and McEnroe had asked for only $10,000 per acre. Johnson Farms contends the trial court's separate transaction theory is preposterous because when McEnroe offered to sell the remainder of the 59.17 acres in the February 1994 option for $159,530, it resulted in a $5,585.78 per acre purchase price only one month after McEnroe sold 30.61 acres for $12,185.56 per acre.

[¶ 10] In its memorandum opinion, the trial court set forth its reasons for finding Johnson Farms had overpaid the McEnroes for the 30.61 acres in January 1994:

The Rychart property conveyed to George C. McEnroe on January 18, 1994 carried a cost to Johnson Farms of

$373,000, or $88,000 more than Bert Johnson's original bid. That auction bid was reduced to writing between Bert Johnson and the Rycharts on November 16, 1993.... Mr. Johnson's $373,000 would have purchased 41.444+ acres of the McEnroe property, at $9,000.00 an acre. However, he decided to buy only 31.23 acres.[1] ... No mention is made of the differences in the documents of exchange.... That fact alone has led defendants to contend that the $373,000 should be considered as the agreed price for the 31.23–acres that they conveyed to Johnson Farms. That position appears inconsistent with the voluntary action of George McEnroe to offer the option terms that he did. But for the option, the evidence would support a finding that the $373,000 was the exchange price for the 31.23 acres actually purchased by Johnson Farms from George and Donna McEnroe. However, the evidence in the case, particularly including the option offered by George McEnroe on February 19, 1994, shows that the agreed price for those 31.23 acres was $9,000.00 per acre.

$373,000 plus $159,530 equals $532,530, divided by $9,000 equals 59.17 acres at $9,000 per acre. 59.17 acres less 31.23 purchased equals 27.94 acres remaining unsold. 31.23 acres times $9,000 per acre equals $281,070 paid and due to McEnroes. $373,000 actually paid by Johnson Farms for Rychart land and exchanged for 31.23 acres. $373,000 less $281,070 equals $91,930. This amount is due from McEnroes to Bert Johnson, d/b/a/ Johnson Farms.

[¶ 11] It is evident the trial court found the parties agreed to a purchase price of $9,000 per acre for the January 1994 transaction based solely upon the purchase price set forth in the option added to the amount paid by Johnson Farms for the Rychart property, divided by 59.17 acres. This is tantamount to a finding that the Rychart property exchange was only the first part of an overarching agreement for the purchase of the entire 59.17 acres. The trial court's use of this method to calculate the overpayment is internally inconsistent with its finding that the only agreement between the parties was for the purchase of the 30.61 acres of land in January 1994.

[¶ 12] We favor permitting a trial court, upon motion of a party, to clarify obvious inconsistencies and ambiguities in its judgments. *Woodworth v. Chillemi*, 1999 ND 43, ¶ 14, 590 N.W.2d 446. However, where the inconsistencies and ambiguities in the trial court's findings of fact and conclusions of law are incapable of reconciliation to support a judgment, reversal and remand for a new trial is required. *See, e.g., United States v. Jefferson Electric Mfg. Co.*, 291 U.S. 386, 405–06, 54 S.Ct. 443, 78 L.Ed. 859 (1934); *Renfer v. Skaggs*, 96 Cal.App.2d 380, 215 P.2d 487, 489 (1950); *Wickham v. Famco Services, Inc.*, 350 So.2d 1159, 1161 (Fla.App. 1977); *Bob Anderson Pontiac, Inc. v. Davidson*, 155 Ind.App. 395, 293 N.E.2d 232, 237 (1973); *Hawkins v. Teeples and Thatcher, Inc.*, 267 Or. 151, 515 P.2d 927, 931–32 (1973); 75B Am.Jur. *Trial* § 1982 (1992); 89 C.J.S. *Trial* § 636 (1955). The test is similar to the one applied to a jury's special verdict, where we will reverse and remand for a new trial if no reconciliation of the jury's answers is possible and the inconsistency is such that the special verdict will not support the judgment entered below or any other judgment. *See, e.g., Barta v. Hinds*, 1998 ND 104, ¶ 6, 578 N.W.2d 553; *Fontes v. Dixon*, 544 N.W.2d 869, 871 (N.D.1996); *Binstock v. Fort Yates Public School District*, 463 N.W.2d 837, 839–40 (N.D.1990); *Massey–Ferguson Credit Corp. v. Orr*, 420 N.W.2d 1, 3 (N.D. 1988).

[¶ 13] The pivotal issue in this case is whether there was an oral agreement for the purchase of the entire 59.17 acres of

---

1. The trial court used the figure, "31.23 acres," because in July 1994, the McEnroes conveyed an additional .62 acres of land to Johnson Farms as part of the transaction.

the McEnroe property. The trial court's express finding and its method of determining Johnson Farms' overpayment for the initial 30.61 acre exchange provide opposite answers to this question. The parties have not suggested how this inconsistency can be reconciled, and we, too, are unable to resolve the conflict. We conclude the trial court's inconsistent findings do not support the judgment, and we reverse and remand for a new trial on all issues.

### III

■ [¶ 14] The McEnroes argue the trial court erred in failing to dismiss Donna McEnroe as a party to this action because there is no evidence she participated in any of the discussions or negotiations concerning the property Johnson Farms seeks to recover through specific performance. The McEnroes moved to dismiss Donna McEnroe from the action, but the trial court failed to specifically rule on the motion.

[¶ 15] Title to all of the 59.17 acres involved in this case is in the name of George McEnroe alone. Donna McEnroe signed the initial deed conveying the 30.61 acres to Johnson Farms in January 1994 and the later deed conveying the additional .62 acres to Johnson Farms in July 1994. During trial, she claimed a homestead interest in the remainder of the 59.17 acres.

■ [¶ 16] In *Sexton v. Sutherland,* 37 N.D. 500, 164 N.W. 278 (1917), Patrick Sexton and Margaret Sexton, husband and wife, sued the defendants to quiet title to real property claimed as their homestead. Title to the property was in the name of Patrick Sexton alone. The defendants argued, because legal title to the homestead was in the name of the husband, the wife did not have a sufficient interest to maintain an action to determine adverse claims. This Court said:

> The question here presented is whether [Margaret Sexton] is a proper party plaintiff in an action instituted by her husband to determine adverse claims to

such homestead. We are agreed that, while a wife is not an indispensable party to such action she is nevertheless a proper party. She is clearly interested in the object of, and the relief sought in, the action. She has an interest in the subject-matter of the litigation, which cannot be concluded by decree unless she is made a party to the proceeding. If the defendants had desired to enforce their claims against the premises either by action to determine adverse claims or otherwise, it would have been manifestly proper for them to join both Patrick Sexton and Margaret Sexton as parties defendant. In fact, this would have been absolutely necessary in order to obtain a judgment concluding the homestead rights, if any, of Margaret Sexton in the premises.

*Sexton,* 37 N.D. at 511, 164 N.W. at 282. *Sexton* comports with the generally recognized rule that one spouse cannot be divested of homestead rights by judicial proceedings in which only the other spouse is a party, even if title to the homestead property is in the name of the other spouse alone. *See, e.g., Francksen v. Miller,* 297 N.W.2d 375, 377–78 (Iowa 1980); *Priddy v. Massey,* 208 Okla. 369, 256 P.2d 425, 426–27 (1953); Annot., *Judgment involving real property against one spouse as binding against other spouse not a party to the proceeding,* 58 A.L.R.2d 701, § 18 (1958).

[¶ 17] Donna McEnroe is a proper party in this action for specific performance of an oral agreement for the purchase of property in which she claims a homestead interest. If specific performance is granted, Donna McEnroe's homestead rights, if any, under N.D.C.C. ch. 47–18, will need to be addressed. Because we reverse and remand for a new trial, thus placing this case in its original posture, it is unnecessary to decide whether the trial court erred in failing to dismiss Donna McEnroe from the action after dismissing Johnson Farms' claim for specific performance.

## IV

[¶ 18] The judgment is reversed and the case is remanded for a new trial on all issues.

[¶ 19] VANDE WALLE, C.J., KAPSNER, NEUMANN, JJ., and JAMES M. BEKKEN, D.J., concur.

[¶ 20] The Honorable JAMES M. BEKKEN, D.J., sitting in place of SANDSTROM, J., disqualified.