2000 ND 192

**CENTER MUTUAL INSURANCE COMPANY, Plaintiff and Appellee,**

v.

**Larry THOMPSON, Defendant and Appellant.**

No. 20000118.

Supreme Court of North Dakota.

Oct. 31, 2000.

Jason R. Vendsel, McGee, Hankla, Backes & Dobrovolny, Minot, N.D., for plaintiff and appellee.

Ralph A. Vinje, Vinje Law Firm, Bismarck, N.D., for defendant and appellant.

NEUMANN, Justice.

[¶ 1] Larry Thompson appealed a declaratory judgment ruling Center Mutual Insurance Company ("Center Mutual") had no duty to defend or indemnify him in a civil action brought against him by his son, John Thompson. We affirm.

[¶ 2] On January 11, 1992, John Thompson, an eighteen-year-old high school senior, was injured when his arms became entangled in a power takeoff shaft for an auger on his family's farm, where he lived with his parents, Larry and Karen Thompson. At the time of John's injury, his parents had a farm owner's insurance policy with Center Mutual that included a Farm Employer's Liability Coverage endorsement.

[¶ 3] John Thompson sued Larry Thompson in 1997 to recover damages resulting from his 1992 injury. Center Mutual sued Larry Thompson for a declaratory judgment ruling it had no duty to defend or indemnify him in the suit brought against him by John. In its complaint, Center Mutual alleged it denied coverage because John Thompson "was a resident of the Larry Thompson household," and his claims were excluded by the following exclusion:

Coverage L [1] does not apply to:

1. bodily injury to *you*, and if residents of *your* household, *your* relatives, and persons under the age of 21 in *your* care. . . .

In an October 22, 1997, letter to John Thompson's attorney, Center Mutual said:

As you know, Center Mutual has filed a declaratory action pertaining to Larry Thompson's insurance policy. It appears clear that his insurance policy does not provide coverage for resident relatives or employees, and as a result, there is no liability coverage for John Thompson. However, if you are aware of any facts which would affect coverage under Larry Thompson's policy, please inform us in order that we may reevaluate our position and settlement posture.

On December 18, 1997, Larry Thompson answered Center Mutual's complaint, denying the claims were excluded from coverage, and asserting the policy was ambiguous and should be interpreted to provide coverage. Larry also counterclaimed against Center Mutual for $3,000,000, alleging he had agreed to entry of judgment against him and in favor of John Thompson for $3,000,000.[2]

[¶ 4] The liability coverage section of the Center Mutual farm owner's policy defines a farm employee as "an employee of an insured whose duties are in connection with the farming operations of the insured." It provides for Coverage L—Personal Liability, and Coverage M—Medical Payments to Others. In the exclusions to coverages L & M, it provides:

This policy does not apply to:

---

1. Coverage L covers personal liability for bodily injury or property damage.

2. On January 29, 1998, judgment was entered in John's suit against Larry. It provided judgment against Larry and in favor of John for $3,000,000, and provided John "may seek only to satisfy this judgment from Center Mutual Insurance Company and/or the agent or any insurance company insuring the agent who sold Larry Thompson the policy."

12. bodily injury to a farm employee of an insured if it occurs in the course of employment. . . .

For Coverage L, it also excludes:

1. bodily injury to *you,* and if residents of *your* household, *your* relatives, and persons under the age of 21 in *your* care . . .;

For Coverage M, it excludes bodily injury to "an insured or other person who resides on the insured premises, except a domestic employee."

[¶ 5] The Farm Employer's Liability Coverage endorsement to the farm owner's policy does not specify any number of employees to be covered and does not indicate any farm employees not to be covered in spaces provided for such disclosures. It provides coverage:

Coverage L—Personal Liability and Coverage M—Medical Payments to Others are extended to apply to *bodily injury* to a *farm employee* while performing duties in connection with the *farming* operations of an *insured.*

This coverage includes the following:

1. Coverages L and M apply to *bodily injury* to a person while performing duties as a *farm employee* if the *bodily injury* results;

. . . .

b. From the ownership, maintenance, use, loading or unloading of a *motorized vehicle* . . . .

It provides the following exclusion:

4. Coverage under this endorsement does not apply to liability for *bodily injury* excluded under the Liability Coverage Section and not specifically covered under this endorsement.

[¶ 6] Center Mutual sought partial summary judgment that there was no coverage under the liability coverage section because John Thompson was a member of Larry Thompson's family, living on the family farm, and excluded under the household resident exclusion. Larry Thompson moved for summary judgment on the ground John was an employee under the farm employer's liability endorsement. The trial court denied both motions.

[¶ 7] After a trial, the trial court found John Thompson "was a 'family member' and a 'resident relative' of Larry and Karen Thompson's as those words were used for the Center Mutual Farm Owner's Policy in effect," and "for purposes of coverage under the Farm Employer's Liability Coverage of that Farm Owner's Insurance Policy, John Thompson was not a farm employee on the date of his suffering the severe injuries on January 11, 1992." The court concluded John Thompson was not an employee:

While he did work on the farm as a member of the family and did work that would be constituting farm work, he was not a farm employee nor was he an independent contractor. Rather, he was merely doing what his father expected him to do which was do certain responsibilities as a member of the family growing up on the farm.

The court ordered a declaratory judgment ruling Center Mutual had no duty to defend or indemnify Larry Thompson, "since John Thompson was not a farm employee and was a 'resident relative' and 'family member' of Larry and Karen Thompson." Larry Thompson appealed the judgment entered on April 10, 2000.

I

[¶ 8] Relying on *General Accident Ins. Group v. Cirucci,* 46 N.Y.2d 862, 414 N.Y.S.2d 512, 387 N.E.2d 223, 225 (1979), and *D.E.M. v. Allickson,* 555 N.W.2d 596 (N.D.1996), Larry Thompson contends Center Mutual waived "its right to challenge liability on the grounds that the endorsement does not apply," because it initially denied coverage on the ground John Thompson was a resident relative of the Larry Thompson household.

[¶ 9] Generally, an insurer denying liability on specified grounds may not sub-

sequently attempt to deny liability on different grounds. *Allickson*, 555 N.W.2d at 599. As we noted in *Allickson*, 555 N.W.2d at 600, *Cirucci*, 414 N.Y.S.2d 512, 387 N.E.2d at 225, explained the rationale for the rule:

> Although an insurer may disclaim coverage for a valid reason ... the notice of disclaimer must promptly apprise the claimant with a high degree of specificity of the ground or grounds on which the disclaimer is predicated. Absent such specific notice, a claimant might have difficulty assessing whether the insurer will be able to disclaim successfully. This uncertainty could prejudice the claimant's ability to ultimately obtain recovery. In addition, the [insurer's] responsibility to furnish notice of the specified ground on which the disclaimer is based is not unduly burdensome, the insurer being highly experienced and sophisticated in such matters.

In *Allickson*, 555 N.W.2d at 601, this Court held an insurer that failed to apprise its insured of its reliance upon a bodily injury provision when the insured was in a position to cure an alleged lack of notice, was estopped to raise the alleged lack of notice of a bodily injury claim as a defense.

 [¶ 10] Larry Thompson argues "[i]t appears that under the holding in *D.E.M. v. Allickson, Id.*, that Center Mutual cannot be allowed to argue that the endorsement does not apply to John." However, that case was decided on the basis of estoppel. "The crucial elements of estoppel in this context are the insurer's stated reliance upon one ground for denying liability without stating additional known grounds, and resulting prejudice to the claimant." *Allickson*, 555 N.W.2d at 601. Larry Thompson has not shown he was prejudiced by Center Mutual's initial disclaimer of coverage under the resident relative exclusion and its later, additional, argument John Thompson was not an employee covered by the endorsement. We conclude Center Mutual was not estopped from asserting there was no coverage because John Thompson was not an employee of Larry Thompson.

## II

 [¶ 11] Larry Thompson asserts the Center Mutual insurance policy should be construed to provide coverage in accordance with his reasonable expectations. He argues "a policy holder's reasonable expectations regarding the nature, scope and terms of his insurance coverage should be honored by the Courts even though a careful review of the policy language reveals a particular limitation or exclusion." He asserts "[t]he Reasonable Expectations Doctrine has been adopted by the North Dakota Supreme Court," and he contends "[i]t certainly is not unreasonable for Larry Thompson to expect that a farm employee's liability endorsement would apply when his only farm employee was his son John."

[¶ 12] In affirming a judgment against an insurer, two justices in *Mills v. Agrichemical Aviation, Inc.*, 250 N.W.2d 663 (N.D.1977), relied, in part, on the doctrine of reasonable expectations. Three justices concurred specially, reaching the same result without relying on the doctrine of reasonable expectations. As we said in *RLI Ins. Co. v. Heling*, 520 N.W.2d 849, 854–55 (N.D.1994), "[t]he doctrine of reasonable expectations [ ] is an interpretive tool in the construction of contracts," which "has yet to be accepted by a majority of this court." Furthermore, Larry Thompson's testimony showed he did not expect coverage of his children when he bought the insurance. We conclude the trial court properly determined "[t]he Reasonable Expectations Doctrine set forth by [Larry Thompson] in his brief is inapplicable in this case."

## III

[¶ 13] Larry Thompson contends the trial court was legally incorrect in concluding John Thompson was not a farm employee under the policy definition of a farm employee. He argues 1) the policy does not

require a farm employee to be paid; 2) "[t]he trial judge appears to have adopted the definition of employee as somebody who was performing farm labor and was paid by cash, check or other means of monetary compensation;" and 3) "John Thompson was an employee, by definition of the policy, in that he engaged in duties in connection with the farming operations of the insured."

[¶ 14] We recently addressed our review of a trial court's interpretation of an insurance policy in *DeCoteau v. Nodak Mut. Ins. Co.*, 2000 ND 3, ¶ 19, 603 N.W.2d 906:

> The interpretation of an insurance policy is a question of law, fully reviewable on appeal. *Close*, 1998 ND 167, ¶ 12, 583 N.W.2d 794. We review a trial court's interpretation of an insurance policy by independently examining and construing the policy. *Id.* We look first to the language of the policy as a whole, and if the language is clear on its face, there is no room for construction. *See Thompson v. Nodak Mut. Ins. Co.*, 466 N.W.2d 115, 119 (N.D.1991). The determination of whether or not a policy is ambiguous is a question of law for the court. *Sellie v. North Dakota Ins. Guar. Ass'n*, 494 N.W.2d 151, 156 (N.D. 1992).

"[T]erms of an insurance policy are given their ordinary, usual and commonly accepted meaning." *Thedin v. United States Fidelity & Guar. Ins. Co.*, 518 N.W.2d 703, 706 (N.D.1994). "An ambiguity exists when good arguments can be made for two contrary positions about the meaning of a term in a document." *Fisher v. American Family Mut. Ins. Co.*, 1998 ND 109, ¶ 5, 579 N.W.2d 599.

[¶ 15] "The absence of a definition in and of itself does not establish ambiguity." *Fireman's Fund Ins. Cos. v. Ex–Cell–O Corp.*, 702 F.Supp. 1317, 1323 n. 7 (E.D.Mich.1988). *See also Carey Canada, Inc. v. Columbia Cas. Co.*, 940 F.2d 1548, 1556 (D.C.Cir.1991) (stating "neither the mere absence of a policy definition nor the presence of a dispute as to meaning of the provision necessarily renders the policy or term ambiguous"); *Hanneman v. Continental Western Ins. Co.*, 1998 ND 46, ¶ 28, 575 N.W.2d 445 (stating "merely because a contract term is undefined, disputable, or vague does not mean the issue is automatically resolved in favor of the insured"). "When an insurance policy fails to define a term, we often turn to the dictionary to determine the plain, ordinary meaning of that term." *Dundee Mut. Ins. Co. v. Marifjeren*, 1998 ND 222, ¶ 14, 587 N.W.2d 191.

[¶ 16] Center Mutual's failure to define an employee does not render the policy ambiguous or require construing the policy against Center Mutual. The policy defines a farm employee as "an employee of an insured whose duties are in connection with the farming operations of the insured." Thus, the existence of coverage requires a finding that an individual is an employee, which the policy does not define. Because the insurance policy does not define "employee," we must apply the plain, ordinary meaning of the term. *Webster's New World Dictionary of the American Language* (2d College ed.1980) defines an employee as "a person hired by another, or by a business firm, etc., to work for wages or salary." The *American Heritage Dictionary of the English Language* (1973) defines an employee as a "person who works for another in return for financial or other compensation." Thus, in ordinary usage, an employee is a person who works for another in exchange for compensation.

[¶ 17] An employer-employee relationship is based on a contract. "We are satisfied that absent an indication of a different meaning in an insurance contract, the word 'employee,' understood in its common and usual sense, signifies one who is a party to an employment contract, express or implied," *Savoie v. Fireman's Fund Ins. Co.*, 347 So.2d 188, 191 (La. 1977). "A contract of employment is a contract by which one, who is called the

employer, engages another, who is called the employee, to do something for the benefit of the employer or of a third person." N.D.C.C. § 34–01–01. "A contract is an agreement to do or not to do a certain thing," N.D.C.C. § 9–01–01(1), and requires "consent of the parties . . . and . . . cause or consideration," N.D.C.C. § 9–01–02.

[¶ 18] We conclude the trial court did not err, as a matter of law, in determining an employee covered by the endorsement is one who works for another in exchange for consideration.

IV

[¶ 19] Larry Thompson contends the trial court erred in determining John was not, in fact, an employee.

[¶ 20] "[T]he existence of an employment relationship is ordinarily a question of fact." *Great West Cas. Co. v. Bergeson*, 550 N.W.2d 418, 420 (S.D.1996). "No single factor can be determinative; each case must be decided on its own facts." *Id.* "The existence of a contract is a question of fact." *Lonesome Dove Petroleum, Inc. v. Nelson*, 2000 ND 104, ¶ 15, 611 N.W.2d 154 (citing *Stout v. Fisher Industries, Inc.*, 1999 ND 218, ¶ 11, 603 N.W.2d 52, where we held the existence of an oral employment contract was a question of fact). Our review of fact questions is governed by the "clearly erroneous" standard of N.D.R.Civ.P. 52(a). *Lonesome Dove Petroleum, Inc.*, at ¶ 15. "[A] finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if, on the entire record, we are left with a definite and firm conviction a mistake has been made." *Id.* A trial court's choice between two permissible views of the weight of the evidence is not clearly erroneous. *Tishmack v. Tishmack*, 2000 ND 103, ¶ 8, 611 N.W.2d 204. On appeal, we do not reweigh conflicts in the evidence. *Habeck v. MacDonald*, 520 N.W.2d 808, 813 (N.D.1994). A trial court's findings of

fact are presumed correct. *Peterson v. Peterson*, 1999 ND 191, ¶ 6, 600 N.W.2d 851.

[¶ 21] In determining if an individual is an employee under an insurance policy, courts look to such factors as the alleged employer's control over the individual, the alleged employer's ability to discharge the individual, whether the employer furnished materials, tools, or equipment, the regularity of work, and if the employer compensated the individual for work performed. *Illinois Founders Ins. Co. v. Barnett*, 304 Ill.App.3d 602, 237 Ill.Dec. 605, 710 N.E.2d 28, 36 (1999). The court in *Hudson v. Allstate Ins. Co.*, 169 So.2d 598, 602 (La.Ct.App.1964), found there was no employer-employee relationship:

Here, Ted Hudson was a minor. He was a nephew (by marriage) of Herbert L. Miller. He lived nearby, and as was natural, Mr. Miller sometimes invited Ted or his brother to assist him in small jobs. Never was any pay stipulated or expected. Never was any length of employment discussed or contemplated. Ted was free to help or not to help. He was free to do the job as Mr. Miller wanted it done, or he could have declined. It was always a pure and simple accommodation on the part of Ted Hudson. Never did he tell his uncle, "You owe me so much," but always "I charge you nothing." Every time Mr. Miller gave the boy any money, it was a gratuity in appreciation for the help rather than a wage given in payment of service.

Ordinarily, a family relationship does not achieve the status of an employment relationship without characteristics peculiar to employment, such as compensation, regularly scheduled hours, and continuity of service. *Farm Bureau Mut. Ins. Co. v. Weber*, 310 Minn. 52, 245 N.W.2d 238, 239 Syll. 1 (Minn.1976).

[¶ 22] Larry Thompson testified: 1) John "was expected, just like every other farm boy around the country, to help out on the farm and do the chores and activi-

ties"; 2) "there was no formal arrangement as to a certain salary or wage. [He] simply gave [his sons] spending money when they needed it"; 3) he bought and fed 4–H steers for his sons, "[p]lus they had cars, they had motorcycles, they had four-wheelers. I mean it was all kind of figured in"; 4) he never gave John a W–2 for 1991 or earlier years; and 5) he controlled the work, furnished the tools and supplies, and could terminate his sons' services at any time.

[¶ 23] John Thompson testified: 1) he never referred to his father as his employer or to himself as an employee; 2) he was "doing the farm work just as all the other farm boys in—in the area would"; 3) he never had a contractual arrangement about what to do with his father, who "just told us what to do"; and 4) there was never a written or verbal arrangement to be paid "like monthly salaries."

[¶ 24] There is evidence supporting the trial court's finding "John Thompson was not a farm employee on the date of his suffering the severe injuries on January 11, 1992," and we conclude the finding is not clearly erroneous.

[¶ 25] Affirmed.

[¶ 26] MARY MUEHLEN MARING, DALE V. SANDSTROM, JJ., ALLAN L. SCHMALENBERGER, D.J., CAROL RONNING KAPSNER, Acting C.J., concur.

[¶ 27] The Honorable ALLAN L. SCHMALENBERGER, D.J., sitting in place of VANDE WALLE, C.J., disqualified.