2002 ND 122

**JOHNSON FARMS, a general partnership, Plaintiff and Appellant,**

v.

**George G. McENROE and Donna McEnroe, Defendants and Appellees.**

No. 20010148.

Supreme Court of North Dakota.

July 17, 2002.

Petition for Rehearing Jan. 22, 2003.

Douglas A. Christensen, Pearson Christensen, Grand Forks, for plaintiff and appellant.

Robert Vaaler, Grand Forks, for defendants and appellees.

NEUMANN, Justice.

[¶ 1] Johnson Farms, a general partnership, appealed a judgment dismissing its causes of action against George G. McEnroe and Donna McEnroe (collectively, "McEnroe"). We reverse and direct entry of judgment for Johnson Farms.

I

[¶ 2] This is the third appeal in Johnson Farms' litigation to enforce an alleged oral agreement to purchase from McEnroes real property adjacent to Grand Forks. *See Johnson Farms v. McEnroe*, 2000 ND 137, 613 N.W.2d 497 ("*Johnson Farms II* "); *Johnson Farms v. McEnroe*, 1997 ND 179, 568 N.W.2d 920 ("*Johnson Farms I* ").

[¶ 3] In a February 12, 1996, complaint, Johnson Farms alleged it and McEnroe agreed Johnson Farms would purchase 59.17 acres of land from McEnroe for $9,000 per acre, for a total of $532,530, to be structured as a "like kind" exchange. Johnson Farms alleged it bought Rychart farmland on November 16, 1993, for $373,000, and exchanged it for 30.61 acres of McEnroe land, which was equivalent to $12,185.56 per acre, on January 18, 1994, and that George McEnroe later gave Johnson Farms an option, until April 1, 1995, to pay the balance by providing "like kind" property acceptable to McEnroe or depositing $159,530.[1] Johnson Farms alleged that in January 1996, George McEnroe advised he would no longer honor the option. Johnson Farms sued for specific performance of the parties' oral agreement or for a return of the $97,510 overpayment it paid for the 30.61 acres it acquired in the exchange for the Rychart land.

[¶ 4] The trial court granted McEnroe's motion for summary judgment. Johnson Farms appealed. To decide whether summary judgment had been appropriately granted we reviewed the evidence in the light most favorable to Johnson Farms, the party who opposed the summary judgment. *Johnson Farms I,* 1997 ND 179, ¶ 2, 568 N.W.2d 920. Viewing the evidence in that light, we noted the Rychart transaction "resulted in Johnson Farms effectively paying $3,185.56 per acre more than the agreed $9,000 per acre sale price for that 30.61 acres of property" and "Johnson Farms then owed the McEnroes $159,530 for the balance of the 59.17 acres." *Id.* at ¶ 3. We also said:

> If Johnson Farms does not succeed on its claim for specific performance, it has a claim against the McEnroes for a refund of the difference in value of the amount paid for the Rychart property and the value of the McEnroe property it received in exchange.

*Id.* at ¶ 22. We reversed the summary judgment and remanded for trial. *Id.* at ¶ 31.

[¶ 5] After a trial, the trial court found the parties' only oral agreement was for the purchase of 30.61 acres, and found Johnson Farms overpaid $91,930 for the 30.61 acres conveyed to it:

> [T]he only oral contract that ever existed between the parties, that is material

---

1. The trial court found the option was not exercised in either way before April 1, 1995.

to this case, is their oral agreement by which Johnson Farms agreed to exchange the Rychart property it purchased in November of 1993 for 30.61 acres of property described above. The Court further finds that the oral agreement for such exchange included an agreement of the parties that the property exchanged by the Defendants had an agreed value of $9,000 per acre, and that the Plaintiff intended to convey to the Defendants in exchange for Defendants' property a tract of land having a value corresponding to the 30.61 acres of the Defendants' land valued at $9,000 per acre.

[T]he tract of land traded by the Defendants to the Plaintiff pursuant to the oral agreement between the parties was valued at the agreed price of $9,000 per acre, or a value of $281,070.00. The price paid by the Plaintiff for the Rychart property traded to the Defendant George McEnroe was $373,000.00, $91,930.00 more than the agreed value of the land traded by Defendants to Plaintiff for said property. This constituted an overpayment by the Plaintiff of $91,930.00.

*Johnson Farms II*, 2000 ND 137, ¶ 4, 613 N.W.2d 497. We found the trial court's findings were inconsistent, *id.* at ¶ 7, and said:

It is evident the trial court found the parties agreed to a purchase price of $9,000 per acre for the January 1994 transaction based solely upon the purchase price set forth in the option added to the amount paid by Johnson Farms for the Rychart property, divided by 59.17 acres. This is tantamount to a finding that the Rychart property exchange was only the first part of an overarching agreement for the purchase of the entire 59.17 acres. The trial court's use of this method to calculate

the overpayment is internally inconsistent with its finding that the only agreement between the parties was for the purchase of the 30.61 acres of land in January 1994.

*Id.* at ¶ 11. We continued:

The pivotal issue in this case is whether there was an oral agreement for the purchase of the entire 59.17 acres of the McEnroe property. The trial court's express finding and its method of determining Johnson Farms' overpayment for the initial 30.61 acre exchange provide opposite answers to this question.... We conclude the trial court's inconsistent findings do not support the judgment, and we reverse and remand for a new trial on all issues.

*Id.* at ¶ 13.

[¶ 6]    After a retrial, the trial court readopted some of its earlier findings of fact, withdrew others, made new or additional findings of fact, and ordered dismissal of Johnson Farms' claims for specific performance or damages for overpayment. The court made the following findings of fact:

"10.    FOUND the only oral contract that ever existed between the parties, that is material to [t]his case, is their oral agreement by which Johnson Farms agreed to exchange the Rychart property it purchased in November of 1993 for 30.61 acres of property described above."

. . . .

32.    FOUND that the Plaintiff has failed to provide convincing proofs of the elements ... necessary to show the existence of an oral contract between the parties under which Johnson Farms had agreed to buy all 60 of the McEnroe's available acres, before the Rychart property became available for exchange.

33.    FOUND that the price of $373,000 for the property deeded by the McEnroe's to Johnson Farms in Janu-

ary and July of 1994 [2] was fair and reasonable in exchange for the Rychart property which had been purchased at auction on November 16, 1993 by Johnson Farms in the name of Nor Agra, Inc for that same price.

. . . .

37. FOUND that the tracts deeded by the McEnroe's to Johnson Farms in January and July 1994 were then of greater value per acre to Johnson Farms for their development purposes than were the northerly and westerly acres retained by George McEnroe because the easterly acres were adjacent to installed streets and sewers and closer to already developed residential property.

The trial court explained its earlier inconsistent findings:

The inconsistency arose from the trial Court's application, in the 1998 trial, of the last sentence in ¶ 22 of *Johnson Farms v. McEnroe*, 1997 ND 179, 568 N.W.2d 920 which stated:

"If Johnson Farms does not succeed on its claim for specific performance, it has a claim against the McEnroes for a refund of the difference in value of the amount paid for the Rychart property and the value of the McEnroe property received in exchange."

At the 1998 trial this court understood the Supreme Court's statement, just quoted, as a directive to be literally applied. . . . Had the Court not believed itself bound to award that money judgment to plaintiff under those circumstances it would not have done so.

Johnson Farms appealed from a judgment dismissing its causes of action.

2. "[I]n July 1994, the McEnroes conveyed an additional .62 acres of land to Johnson Farms as part of the transaction." *Johnson Farms v.*

## II

[¶ 7] On appeal, Johnson Farms challenges the trial court's findings of fact. Johnson Farms argues the trial court's finding no oral agreement for the sale of sixty acres and that the exchange of the Rychart property was a fair and reasonable exchange is clearly erroneous.

[¶ 8] We review a trial court's findings of fact under the clearly erroneous standard of N.D.R.Civ.P. 52(a). *Center Mut. Ins. Co. v. Thompson*, 2000 ND 192, ¶ 20, 618 N.W.2d 505. A trial court is required, under N.D.R.Civ.P. 52(a), to make findings of fact and conclusions of law to enable the appellate court to understand the trial court's factual determinations and the basis for its conclusions of law and judgment. *Webster v. Regan*, 2000 ND 18, ¶ 6, 605 N.W.2d 808. A trial court's findings of fact and conclusions of law should be stated with sufficient specificity to assist us in our review and to afford a clear understanding of the trial court's decision. *Radspinner v. Charlesworth*, 346 N.W.2d 727, 730 (N.D.1984). A finding of fact is clearly erroneous when, although there is some evidence to support it, a reviewing court is left with a definite and firm conviction that a mistake has been made. *Rassier v. Houim*, 488 N.W.2d 635, 638 (N.D.1992).

[¶ 9] On a case remanded without specific instructions, the general rule is a trial court has the power to reverse its findings of fact without receiving new evidence. *See Imperial Chem. Indus. Ltd. v. National Distillers & Chem. Corp.*, 354 F.2d 459 (2d Cir.1965); *see also* V.G. Lewter, Annotation, Power of the Trial Court, On Remand for Further Proceedings, to

*McEnroe*, 2000 ND 137, ¶ 10 n. 1, 613 N.W.2d 497.

Change Prior Fact Findings as to Matter Not Passed Upon By Appellate Court, Without Receiving Further Evidence, 19 A.L.R.3d 502 (1968). However, a concern is raised when the trial court's explanation for changing its findings of fact is its supposed misunderstanding of our prior opinion, rather than the evidence or facts of the case.

[¶ 10] In the present case, the trial court changed its findings of fact on remand. At the conclusion of the trial following our first remand, the court found Johnson Farms established an oral contract had been made between Johnson Farms and McEnroe for a trade of property. The trial court also determined Johnson Farms had made an overpayment for the 30.61 acres it received, and was due $91,930 from McEnroe for the overpayment. Following our second remand, the trial court reversed that finding, holding that the facts now indicate the exchange was for property of equal value, and no refund for overpayment was due Johnson Farms.

[¶ 11] The trial court's explanation for the reversal of its finding was a claimed misunderstanding of a sentence in *Johnson Farms I*, 1997 ND 179, ¶ 22, 568 N.W.2d 920. The last sentence of paragraph 22 states, "If Johnson Farms does not succeed on its claim for specific performance, it has a claim against the McEnroes for a refund of the difference in value of the amount paid for the Rychart property and the value of the McEnroe property it received in exchange." *Id.* The trial court explained in its March 19, 2001, opinion that it felt bound by our directive to award Johnson Farms a judgment for overpayment after concluding the claim for specific performance failed. The trial court further explained that had it not felt so bound by our first opinion, it would have held that Johnson Farms "was not entitled to any refund on the Rychart exchange because the evidence showed that the Rychart and McEnroe properties were found to be of equal value."

[¶ 12] We hold the trial court's finding on this point is clearly erroneous. A review of the evidence presented indicates there existed an oral contract between the parties. Bert Johnson has claimed there was an agreement between Johnson Farms and McEnroe for the exchange of 59.17 acres at $9,000 per acre. Johnson's testimony was supported by a number of witnesses who testified that an agreement was reached between the parties. Tim Crary testified both Johnson and McEnroe told him they had reached an agreement, and that he had attended auctions with McEnroe, who attempted to purchase land to trade. Terry Longtin testified McEnroe told him he traded sixty acres to Johnson and was looking for some land to complete the trade. Douglas Herzog testified that at a city planning meeting McEnroe said he had completed a sixty acre deal with Johnson. John Botsford testified Johnson told him about the agreement, and that Tom McEnroe submitted a bid on behalf of his father for land to complete part of the trade at one of Botsford's auctions.

[¶ 13] McEnroe's actions after the option allegedly expired support the conclusion that there was an oral agreement between the parties. McEnroe claims the option expired on April 1, 1995. However, the evidence clearly indicates McEnroe continued to look for property to complete the transaction after the option expired. *See Johnson Farms I*, 1997 ND 179, ¶ 7, 568 N.W.2d 920. Tim Crary testified he went with Johnson and McEnroe to look at some Hagen property to complete the sale in June 1995, after the option had expired. McEnroe decided he did not want the Hagen property because it was too expensive.

Crary also testified that in November 1995, McEnroe refused a trade for property near Thompson, North Dakota, because he wanted cash to complete the deal. Crary also indicated McEnroe requested in November 1995, that Johnson release some of the 59.17 acres so he could include it in a sale with another party. Terry Longtin testified that in the late fall of 1995, McEnroe told him he was still looking for property to complete the transaction.

[¶ 14] Perhaps the most convincing evidence indicating an oral agreement between the parties is contained in the numbers in this case. Johnson Farms has maintained throughout these proceedings that McEnroe orally agreed in 1993 to sell Johnson Farms 59.17 acres of land for $9,000 per acre, for a total purchase price of $532,530. *See Johnson Farms II*, 2000 ND 137, ¶ 7, 613 N.W.2d 497. In the trial court's second memorandum opinion, it found the parties agreed to a purchase price of $9,000 per acre for the January 1994 transaction based solely upon the purchase price set forth in the option added to the amount paid by Johnson Farms for the Rychart property, divided by the 59.17 acres. *Id.* at ¶ 11. We agree that the evidence supports Johnson Farms' claim that the separate transaction theory is preposterous because McEnroe offered to sell the remaining 27.94 acres in the option for $159,530, or $5,585.78 per acre, only one month after McEnroe sold 30.61 acres for $12,185.56 per acre. *Id.* at ¶ 9. Any reasonable inferences that can be drawn from this evidence support Johnson Farms' claim that an agreement existed to sell 59.17 acres for a price of $9,000 per acre.

[¶ 15] Even though there may have been some slight evidence to support the trial court's revised finding that the parties had exchanged properties of equal value,

in reviewing all of the evidence in this case, we are left with a definite and firm conviction a mistake has been made. The evidence is overwhelmingly to the contrary. We conclude it was error for the trial court to find the parties had exchanged properties of equal value based only on its new interpretation of our opinion. We reverse the trial court's judgment dismissing Johnson Farms' claims against the McEnroes, and direct entry of a judgment in favor of Johnson Farms and against the McEnroes for $91,930.00, the amount the trial court found on remand to be an overpayment for the McEnroe property, plus interest from January 18, 1994, to date of entry of judgment, at the rate of 6 percent per year.

[¶ 16] GERALD W. VANDE WALLE, C.J., and THOMAS J. SCHNEIDER, D.J., and MARY MUEHLEN MARING, JJ., concur.

[¶ 17] The Honorable THOMAS J. SCHNEIDER, D.J., sitting in place of SANDSTROM, J., disqualified.

KAPSNER, Justice, dissenting.

[¶ 18] I respectfully dissent.

[¶ 19] In *Johnson Farms II*, we remanded for a new trial on all issues. We noted, however, the "pivotal issue in this case is whether there was an oral agreement for the purchase of the entire 59.17 acres of the McEnroe property." 2000 ND 137, ¶ 13, 613 N.W.2d 497. The thrust of the majority opinion is that there is no issue on whether the oral agreement was for the entire 59.17 acres but rather a fact finder could make only one determination—an agreement existed to sell 59.17 acres for $9,000 per acre. Further, the majority says the trial court has changed its findings but on the "pivotal issue" the

trial court has twice found the only oral contract was for an exchange of 30.61 acres. *See* ¶¶ 5 and 10 of the majority opinion. Citing only evidence which was part of the record in *Johnson Farms I* and *Johnson Farms II,* the Court now determines the court's finding on the extent of the oral contract is clearly erroneous. It is unclear to me how the Court can reach this result after remanding for a new trial on all issues. If a fact finder could not have found the oral agreement covered only 30.61 acres, this Court should have said so in its earlier opinion.

[¶ 20] "We will not reverse a trial court's factual findings merely because we may have viewed the evidence differently, and a choice between two permissible views of the weight of the evidence is not clearly erroneous." *Corbett v. Corbett,* 2001 ND 113, ¶ 6, 628 N.W.2d 312. The majority opinion reiterates testimony which supports a finding that an agreement existed for 59.17 acres of land. However, there is testimony from which a fact finder, making determinations of credibility, could find the oral agreement only covered 30.61 acres.

[¶ 21] Bert Johnson testified: (1) In 1992 he and McEnroe began discussing Johnson Farms' possible purchase from McEnroe of 80 acres, for which he offered $7,000 an acre and for which McEnroe was asking $11,000 per acre; (2) McEnroe "wanted to hold back 20 acres, so we negotiated on the 60 acres that were left;" (3) In the summer of 1993, they agreed McEnroe would convey 59.17 acres for $9,000 per acre; (4) "I offered him cash. He wanted to make a land trade so he didn't have to pay the taxes;" (5) They agreed Johnson Farms would purchase land and exchange it; (6) Before purchasing the Rychart property, he knew John-

son Farms was committed to pay "$9,000 an acre times 59.17 acres;" (7) The initial exchange for the Rychart property was to be approximately the East Half of the McEnroe land; and (8) The East Half of the McEnroe land was "going to be conveyed originally," because "[i]t was ready for development," as 34th Street "runs along the north side of the ground, ... [a]nd there's water and sewer on that street."

[¶ 22] George McEnroe testified: (1) In 1992 and 1993, he and Bert Johnson discussed sale of the land; (2) In 1993 Johnson orally offered "$10,000 an acre cash price for ... 60 acres;" (3) "I told him that I'd accept it and ... I said, 'When you come in I'll have an earnest money agreement prepared. You bring your checkbook, you put money down on the product and we'll have a deal;'" (4) Johnson never bought the land for $10,000 an acre; (5) When Johnson "came back he said he couldn't pay ten, he could only pay eight;" (6) He "eventually agreed to sell him the land that we exchanged for 30 acres on the eastern end;" (7) He sold or traded 30 acres for the Rychart farm and later gave Mr. Johnson "an option on an additional approximately 30 acres;" and (8) He has never agreed to sell the 60 acres to Johnson for $9,000 an acre.

[¶ 23] McEnroe testified about the option price: "Bert was hung up on $159,530, that's what he was hung up on, and I always wanted to get more money for the property but that's all he wanted to pay;" "[t]hat's the only offer Bert made;" and he directed his "attorney to place the figure 159,530 in the option agreement."

[¶ 24] Thus, there is evidence from which the trial court could, as it did, reasonably infer there was no contract for all 59 acres, and the exchange of the Rychart

property, purchased for $373,000, for 30 acres of the McEnroe land was agreed upon.

[¶ 25] On a reading of the bare transcript, perhaps I too would have found, as the majority opinion now dictates, the oral agreement was for the exchange of 59.17 acres at a price of $9,000 per acre. However, I cannot say I am left with a definite and firm conviction the fact finder was wrong on the evidence that he heard in person. I would affirm.

[¶ 26] CAROL RONNING KAPSNER, Justice.

**On Petition for Rehearing.**

NEUMANN, Justice.

[¶ 27] On August 28, 2002, Johnson Farms petitioned for rehearing. We granted the petition, restored this cause to the calendar, requested briefs and heard arguments. In the original opinion in this case, *Johnson Farms v. McEnroe*, 2002 ND 122, 647 N.W.2d 698 ("*Johnson Farms III*"), a majority of this Court held the trial court clearly erred in finding no oral agreement existed, the exchange was for property of equal value, and no refund for overpayment was owed to Johnson Farms. We concluded the evidence clearly showed an oral contract existed between the parties to sell 59.17 acres to Johnson Farms for $9,000 per acre. We reversed the trial court's judgment dismissing Johnson Farms' claims and directed entry of judgment in favor of Johnson Farms and against McEnroe for $91,930, the amount of the overpayment, plus interest. Johnson Farms petitioned for rehearing because it was not provided a remedy for the McEnroes' failure to convey the remaining 27.94 acres. We now remand, with instructions.

[¶ 28] On rehearing, Johnson Farms asks this Court to direct an order for specific performance of the contract or, alternatively, for a remand to the trial court for a determination of monetary damages. While we decline to direct an award for specific performance, we agree this case should be remanded to the trial court for a determination of the appropriate remedy. We therefore withdraw the part of *Johnson Farms III* that directed entry of judgment in favor of Johnson Farms for the amount of overpayment, $91,930, plus interest, and remand this case to the trial court to review the existing record, consider the equities, and determine the appropriate remedy from among those possible: specific performance, damages based on the value of the property as of the date of breach plus interest, or refund of the overpayment plus interest.

[¶ 29] If on remand the trial court determines specific performance is not the appropriate remedy, under all of the facts and equities in this case, it may determine Johnson Farms is entitled to monetary damages. *Bumann v. Maurer*, 203 N.W.2d 434, 438 (N.D.1972) (stating damages are to be awarded "only when specific performance is impossible or impracticable"). If appropriate, the monetary damages to be awarded would equal:

> [T]he difference between the price agreed to be paid and the value of the estate agreed to be conveyed at the time of the breach and the expenses properly incurred in examining the title, and in preparing to enter upon the land, and the amount paid on the purchase price, if any, with interest thereon from the time of the breach.

N.D.C.C. § 32–03–13. If the trial court determines monetary damages are the appropriate remedy, it may supplement the

record by taking evidence on the issue of value as of the date of breach.

[¶ 30] Finally, the trial court may choose to order judgment in favor of Johnson Farms for the amount of overpayment, $91,930, plus interest, if the trial court decides the remedy from *Johnson Farms III* is appropriate.

[¶ 31] The trial judge who has presided over this matter to this point has retired. It is therefore necessary, and we direct, that this case be reassigned by the presiding judge of the judicial district. We note the successor judge must comply with the requirement of Rule 63, N.D.R.Civ.P., regarding certification of familiarity with the record.

[¶ 32] This case is remanded to the trial court for further consideration and disposition consistent with this opinion.

[¶ 33] GERALD W. VANDE WALLE, C.J., and MARY MUEHLEN MARING and THOMAS J. SCHNEIDER, JJ., concur.

I adhere to my dissent. CAROL RONNING KAPSNER, Justice.

[¶ 34] The Honorable THOMAS J. SCHNEIDER, D.J., sitting in place of SANDSTROM, J., disqualified.